IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| LARRY CARL DIXON, ) | |
| AIS #138238, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 2:07-CV-662-WKW |
| ) | [WO] |
| ) | |
| CHERYL PRICE, et al., ) | |
| ) | |
| Defendants. ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

This case is pending before the court on a 42 U.S.C. § 1983 complaint filed by Larry Carl Dixon ["Dixon"], a state inmate, in which he alleges a myriad of constitutional violations. Specifically, Dixon asserts that he has been denied a transfer to work release, provided inadequate medical treatment by private physicians employed at Baptist Medical Center South in Montgomery, Alabama, and subjected to unlawfully funded rehabilitation programs. He also challenges the transfer of inmates to out of state facilities. Dixon names Cheryl Price, the warden of Bibb County Correctional Facility, Paul Whaley, the Central Classification Director, Baptist South Medical Hospital,[1] Dr. Carlos M. Gutierrez and Dr. Tai Q. Chun, physicians employed at Baptist Medical Center South, and Jeffery Williams, an employee of the Community Corrections Division of the Alabama Department of

---

[1] The proper name of this defendant is Baptist Medical Center South.

Corrections, as defendants in this cause of action. Dixon seeks injunctive relief and monetary damages for the alleged violations of his constitutional rights.

Upon review of the complaint, the court concludes that Dixon's claims related to work release, classification and transfer of inmates are due to be summarily dismissed with prejudice prior to service of process upon application of the directives set forth in 28 U.S.C. § 1915(e)(2)(B)(i).[2]

## I.  DISCUSSION

### A.  The Work Release Claim

Dixon asserts that defendant Price deprived him of due process when she refused to transfer him to work release upon a "recommendation for work-release at [his] Progress Review." *Plaintiff's Complaint - Court Doc. No. 1* at 3. This claim entitles Dixon to no relief.

The Supreme Court has identified two circumstances in which a prisoner, an individual already deprived of his liberty in the ordinary sense, can be further deprived of his liberty such that due process is required. "The first is when a change in a prisoner's conditions of confinement is so severe that it essentially exceeds the sentence imposed by

---

[2] A prisoner who is allowed to proceed *in forma pauperis* in this court will have his complaint screened in accordance with the provisions of 28 U.S.C. § 1915(e)(2)(B). This screening procedure requires the court to dismiss a prisoner's claims prior to service of process if it determines that the complaint contains claims which are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary damages from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

the court. *See Sandin v. Conner,* 515 U.S. 472, 484, 115 S.Ct. 2293, 2300, 132 L.Ed.2d 418 (1995); *see, e.g., Vitek v. Jones,* 445 U.S. 480, 492-93, 100 S.Ct. 1254, 1263-64, 63 L.Ed.2d 552 (1980) (holding that a prisoner is entitled to due process prior to being transferred to a mental hospital). The second is when the state has consistently given a certain benefit to prisoners (for instance, via statute or administrative policy), and the deprivation of that benefit 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.' *Sandin,* 515 U.S. at 484, 115 S.Ct. at 2300; *see, e.g., Wolff v. McDonnell,* 418 U.S. 539, 558, 94 S.Ct. 2963, 2976, 41 L.Ed.2d 935 (1974) (prisoners may not be deprived of statutory 'good-time credits' without due process); *cf. Dudley v. Stewart,* 724 F.2d 1493, 1497-98 (11th Cir.1984) (explaining how the state creates liberty interests). In the first situation, the liberty interest exists apart from the state; in the second situation, the liberty interest is created by the state." *Bass v. Perrin*, 170 F.3d 1312, 1318 (11th Cir. 1999).

The law is well settled that the Due Process Clause itself does not create a constitutionally protected interest in work release. *Kitchen v. Upshaw*, 286 F.3d 179, 188 (4th Cir. 2002) (inmate denied permission to participate in work release has no constitutionally protected interest in work release because "it is clear that being denied permission to leave jail in order to work is nothing more than an ordinary experience of inmates."); *Codd v. Brown*, 949 F.2d, 879 (6th Cir. 1991) (prisoners have no inherent due

process interest in work release). Consequently, the refusal to transfer Dixon to work release did not "exceed the sentence [imposed by the trial court] in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force." *Sandin,* 515 U.S. at 484. The inquiry therefore becomes whether the actions about which Dixon complains imposed on Dixon the type of "atypical, significant deprivation" in which a state might create a liberty interest. *Sandin*, 515 U.S. at 486. The court finds that it did not.

As the Supreme Court recently noted,

> *Sandin* involved prisoners' claims to procedural due process protection before placement in segregated confinement for 30 days, imposed as discipline for disruptive behavior. *Sandin* observed that some of our earlier cases, *Hewitt v. Helms*, 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983), in particular, had employed a methodology for identifying state-created liberty interests that emphasized "the language of a particular [prison] regulation" instead of "the nature of the deprivation." *Sandin*, 515 U.S., at 481, 115 S.Ct. 2293. In *Sandin*, we criticized this methodology as creating a disincentive for States to promulgate procedures for prison management, and as involving the federal courts in the day-to-day management of prisons. *Id.*, at 482-483, 115 S.Ct. 2293. For these reasons, we abrogated the methodology of parsing the language of particular regulations.
> "[T]he search for a negative implication from mandatory language in prisoner regulations has strayed from the real concerns undergirding the liberty protected by the Due Process Clause. The time has come to return to the due process principles we believe were correctly established in and applied in *Wolff* and *Meachum.* Following *Wolff,* we recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will generally be limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.*, at 483-484, 115 S.Ct. 2293 (citations and footnote omitted).
> After *Sandin*, it is clear that the touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive

conditions of confinement is not the language of regulations regarding those conditions but the nature of those conditions themselves "in relation to the ordinary incidents of prison life." *Id.*, at 484, 115 S.Ct. 2293.

*Wilkinson v. Austin*, 545 U.S. 209, 222-223, 125 S.Ct. 2384, 2393-2394 (2005).

Initially, the court notes that prior to *Sandin* the Eleventh Circuit determined that no state created liberty interest existed in work release. *Francis v. Fox*, 838 F.2d 1147, 1149 (11th Cir. 1988). Moreover, applying the *Sandin* standard, the court concludes that the determination remains the same. "[T]he baseline for determining [restraints which constitute the requisite atypical and significant hardship] is ascertained by what a sentenced inmate may reasonably expect to encounter as a result of his or her conviction...." *Griffin v. Vaughn*, 112 F.3d 703, 706 (3rd Cir. 1997). *Sandin* requires the court to "compare the prisoner's liberties after the alleged deprivation with the normal incidents of prison life. *See Sandin,* 515 U.S. at 485-86, 115 S.Ct. 2293.... Since an inmate is normally incarcerated in prison, [his remaining in a restrictive prison facility as opposed to being transferred to a work release facility does] not impose atypical and significant hardship on him in relation to the ordinary incidents of prison life and, therefore, did not deprive him of a protected liberty interest." *Asquith v. Department of Corrections*, 186 F.3d 407, 412 (3rd Cir. 1999); *see also*, *Dominique v. Weld*, 73 F.3d 1156, 1160 (1st Cir. 1996) (An inmate summarily removed from a work-release program for various penological reasons and transferred to a medium security prison after having successfully participated in work release for four years did not possess a protected liberty interest in remaining in work release because

confinement within the prison walls of the medium security prison constituted "an 'ordinary incident of prison life.' It is not 'atypical.'"); *Callender v. Sioux City Residential Treatment Facility*, 88 F.3d 666, 669 (8th Cir. 1996) (return of an inmate to prison after revocation of his work release status imposed neither an atypical nor significant deprivation under *Sandin* because prison is "not atypical of what inmates have to endure in daily prison life.").

In light of the foregoing, the court concludes that refusing to transfer Dixon to work release did not impose an "atypical and significant hardship on [Dixon] in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484. Thus, Dixon did not possess a state created liberty interest in being placed in the work release program. Consequently, the plaintiff's theory of liability under the law as established in *Sandin* is indisputably meritless and, therefore, frivolous within the meaning of 28 U.S.C. § 1915(e)(2)(B)(i). *Neitzke v. Williams*, 490 U.S. 319, 327 (1989).[3]

### B. The Classification Claim

To the extent Dixon challenges his classification level within the Alabama prison system, he is entitled to no relief. An inmate has no constitutionally protected interest in the procedure affecting his classification level because the resulting restraint, without more, does not impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484. Thus, the failure to provide a lower classification level does not implicate the Constitution and this claim is due to be

---

[3]Although *Neitzke* interpreted the provisions of 28 U.S.C. § 1915(d), the predecessor to § 1915(e)(2), the analysis contained therein remains applicable to the present statute.

dismissed under 28 U.S.C. § 1915(e)(2)(B)(i).

### C. Transfer of Inmates to Out of State Correctional Facilities

Dixon asserts that correctional officials improperly transferred inmates to correctional facilities located in Mississippi and Louisiana. To the extent Dixon attempts to present claims relative to the violation of the constitutional rights of other inmates, he lacks standing to assert these claims. *Saladin v. City of Milledgeville*, 812 F.2d 687 (11th Cir. 1987); *Allen v. Wright*, 468 U.S. 737, 751 (1984).

A plaintiff must assert legally cognizable injury in fact, whether real or threatened, before federal courts have jurisdiction. *Schlesinger v. Reservists Committee to Stop the War*, 418 U.S. 208, 218-19 (1974). Standing involves two aspects. The first is the minimum "case or controversy" requirement of Article III. This requirement mandates that the plaintiff himself suffer actual or threatened injury resulting from the action challenged and that such injury is likely to be redressable in a judicial action. *Warth v. Seldin*, 422 U.S. 490, 499 (1975). In addition, the Supreme Court has established several requirements based on prudential considerations. *Saladin*, *supra*. The prudential limitation applicable in this case is that a litigant may not assert the legal rights or interests of another person. *Allen v. Wright*, 468 U.S. 737, 751 (1984).

With respect to claims arising from the alleged violations of other inmates' constitutional rights, Dixon is not "asserting his ... own legal rights and interests [but] rather ... the legal rights and interests of [a] third part[y]." *Saladin*, 812 F.2d at 690. The claims

presented by Dixon as to the transfer of other inmates allege "infringement of a legal interest which clearly does not exist." *Neitzke*, 490 at 327. Thus, these claims are frivolous and subject to dismissal under the provisions of 28 U.S.C. § 1915(e)(2)(B)(i).

If Dixon is challenging his prior transfer to a prison outside of Alabama, he is likewise entitled to no relief. The Constitution itself does not give rise to a liberty interest in avoiding transfer to an out of state correctional facility. *Olim v. Wakinekona*, 461 U.S. 238, 245-246 (1983) (a prisoner has no constitutional right to be confined in a particular institution and may be subjected to an interstate transfer without implicating the Constitution);[4] *Meachum v. Fano,* 427 U.S. 215, 224 (1976) (convicted prisoner has no constitutionally protected right to confinement in a particular penal facility). Although an inmate's confinement at an out of state correctional facility may entail "more burdensome conditions" than that of a correctional facility operated by the Alabama Department of Corrections such confinement is "'within the normal limits or range of custody which the conviction has authorized the State to impose.' *[Meachum,* 427 U.S. at 225]; *see also Montanye v. Haymes,* 427 U.S. 236, 242, 96 S.Ct. 2543, 2547, 49 L.Ed.2d 466 (1976)." *Sandin*, 515 U.S. at 478. Additionally confinement in a prison facility located outside of Alabama does not "impose[] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id*. at 484. Consequently, confinement of Dixon in

---

[4]In *Sandin*, the court noted that its abandonment of prior methodology did not require overruling the decision issued in *Olim* as the *Olim* Court correctly "concluded no liberty interest was at stake." 515 U.S. at 484, n.5.

a correctional facility outside the State of Alabama did not implicate the due process protection of the Constitution and such claim is therefore due to be dismissed in accordance with the directives of 28 U.S.C. § 1915(e)(2)(B)(i).

### D. Rehabilitation Programs

Dixon asserts claims challenging the constitutionality of rehabilitation programs offered by the Alabama Department of Corrections. Specifically, Dixon complains that the programs "are unlawfully funded for fleecing of federal funds and citizens of Alabama." *Plaintiff's Complaint - Court Doc. No. 1* at 3. These claims, however, entitle Dixon to no relief.

The law is well settled that an inmate has no constitutionally protected interest in favorable prison programs as the administration of such programs does not affect "the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484. Thus, Dixon's claims allege "infringement of a legal interest which clearly does not exist" and are therefore due to be dismissed as frivolous within the meaning of 28 U.S.C. § 1915(e)(2)(B)(i). *Neitzke*, 490 U.S. at 327.

## II. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. The plaintiff's work release, rehabilitation and transfer claims be dismissed with prejudice in accordance with the provisions of 28 U.S.C. § 1915(e)(2)(B)(i).

2. Defendants Cheryl Price, Jeffery Williams and Paul Whaley, identified in the

complaint as the central classification director, be dismissed from this cause of action.

3. The plaintiff's claims against Baptist Medical Center South, Dr. Gutierrez and Dr. Chun, be referred back to the undersigned for additional proceedings.

It is further

ORDERED that on or before September 24, 2007 the parties may file objections to this Recommendation. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 11th day of September, 2007.

/s/Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE