IN THE UNITED STATES DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| LARRY CARL DIXON #138238 | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) CIVIL ACTION NO. 2:07-CV-662-WKW |
| | ) |
| CHERYL PRICE, et al., | ) |
| | ) |
| Defendants. | ) |

## SPECIAL RESPONSE

**COMES NOW** Tai Q. Chung, M.D., by and through his attorney, and respectfully submits this Response pursuant to Court's Order of September 11, 2007.

I.   Introduction

The Plaintiff, an inmate with the Alabama Department of Corrections, has apparently filed a Complaint claiming he was denied medical attention and/or treatment for an injury to his left index finger.

II.   The Parties[1]

a.   The Plaintiff, Larry Carl Dixon, is an inmate, based upon information and belief, currently incarcerated at the Elmore County Correctional Facility.

b.   Dr. Tai Q. Chung is an orthopaedic surgeon in private practice in Montgomery, Alabama. Dr. Chung attended college at Princeton University and graduated with a BA in Physics in 1975. Dr. Chung graduated from Yale University Medical School in 1979 and did his surgery internship at Stanford University Medical Center from 1979 to 1980. Dr. Chung's residency was in orthopaedic surgery and he was Board certified with the American Board of Orthopaedic Surgery in 1986, and was recertified in 1996 and 2006.

---

[1] The plaintiff also brings claims against Alabama Department of Corrections, Cheryl Price, Dr. Carlos Gutierrez, and Prison Health Services.

He is currently licensed to practice medicine in California and Alabama.

III.   Facts

The Plaintiff is apparently incarcerated in the Elmore Correctional Facility. The nature of his underlying conviction is unknown.

In late 2003 Dr. Chung did execute a Physician Agreement with Prison Health Services, Inc.(PHS) (See attached Agreement). Under the terms of the agreement, Prison Health Services engaged Dr. Chung to perform orthopedic services, on a non-exclusive basis for inmates. The agreement establishes a reimbursement schedule and billing guidelines for medical services performed by Dr. Chung.

Paragraph 2 of the Physician Agreement states that the physician agrees to support and adhere to the PHS policies and procedures regarding quality assurance and risk management. Paragraph 5 states that in performing services the physician shall be acting as an independent contractor and that the physician shall not be considered an employee of PHS. Further, PHS does not exercise any control over Dr. Chung's professional practice of medicine, and PHS has retained no right of control over the manner in which Dr. Chung performs his services. (See attached Agreement).   There is no contract between the Alabama Department of Corrections and Dr. Chung to provide medical treatment to inmates.

Respectfully submitted this 24h day of September, 2007.

/s/ E. Ham Wilson, Jr.
E. Ham Wilson, Jr.
Attorney for Tai Q. Chung, M.D.

OF COUNSEL:
BALL, BALL, MATTHEWS & NOVAK, P.A.
2000 Interstate Park Drive, Suite 204
Post Office Box 2148
Montgomery, Alabama  36102-2148
(334)387-7680

2

CERTIFICATE OF SERVICE

    I hereby certify that on this September 24, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Office of the Attorney General
11 South Union Street
Montgomery, AL 36130

Staff Attorneys
cc_prose@almd.uscourts.gov

Frank Johnston Stakely
fjs@rsjg.com,gc@rsjg.com

James Eugene Williams
jwilliams@mewlegal.com,lmcgee@mewlegal.com

Manual Notice List

    The following is the list of attorneys who are not on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

Larry Carl Dixon
AIS 138238     E3-1
Bibb County Correctional Facility
565 Bibb Lane
Brent, AL 35034

by placing same in the U.S. mail postage prepaid on this September 24, 2007.


                                    /s/ E. Ham Wilson, Jr.
                                    OF COUNSEL

PHYSICIAN AGREEMENT

between

PRISON HEALTH SERVICES, INC.

and

TAI CHUNG, MD

THIS AGREEMENT IS MADE AND ENTERED INTO this 22nd day of October, 2003, between **PRISON HEALTH SERVICES, INC.**, a Delaware corporation (hereinafter referred to as "**PHS**") and **TAI CHUNG, MD**, a Physician duly licensed to practice medicine under the laws of the State of Alabama (hereinafter referred to as "**Physician**").

I

A. **PHS** is contracted to provide health care services to jail and/or prison inmates under the control of the Alabama Department of Corrections (hereinafter referred to as "**Facility**") in the State of Alabama. As part of its responsibilities, **PHS** is responsible for providing physician medical services.

B. **Physician** is Board certified or Board eligible to provide Orthopedic services.

C. **PHS** wishes to utilize the medical services of the **Physician** and, correspondingly, the **Physician** wishes to provide medical services for **PHS**.

II

NOW, THEREFORE, **PHS** AND **PHYSICAN** DO HEREBY AGREE AS FOLLOWS:

1. **PRINCIPAL TERMS:** **PHS** hereby engages the **Physician** and the **Physician** hereby accepts engagement by **PHS** to provide professional Orthopedic services, on a non-exclusive basis, for the inmates located in **Facility** under the terms and conditions hereinafter set forth:

    1.1 Term of the Agreement

    (a) Commencement Date: November 3, 2003

    (b) This Agreement shall remain in full force and effect

1

for a one (1) year period. Unless notices are properly given under Paragraph 4.A, however, this Agreement shall be automatically renewed for an additional one (1) year period annually.

1.2 Fees for **Physician** Services: **PHS** agrees to reimburse at 93% of usual and customary charges for all authorized and covered services.

1.3 **Physician** agrees to make no additional charges to **PHS** patients or other third party payors, for services for which **PHS** has paid **Physician**. The fees paid by **PHS** represent the **Physician's** full compensation for services rendered to patients under obligation to **PHS** for treatment.

1.4 Adjustment to Rates: **Physician** agrees to notify **PHS** in writing of all changes in its charges at least forty five (45) days in advance of such change. Relevant information shall, upon request of **PHS**, be provided by **Physician** which shall include but is not limited to a schedule of charges, and sufficient information to allow **PHS** to verify the percent of increase and the total dollar impact of the increase. Payment for services will be based upon charges, subject to the discounts shown in Section 1.2

1.5 (a) General and Professional Liability Insurance: The **Physician** shall be insured under a general and professional liability insurance policy covering services to be performed under this Agreement which provides a minimum coverage of $1,000,000 per occurrence and $3,000,000 in the annual aggregate, or a higher amount if such is required by State or local law, regulation or medical society practice.

**Physician** shall have, or shall acquire, such coverage effective on or before the date of commencement of this Agreement. **Physician** shall be solely responsible for the payment of premiums to maintain said policy of insurance. A copy of the Certificate to substantiate coverage will be submitted to **PHS** on or before execution of this Agreement and after each renewal of such insurance as long as this Agreement remains in effect. The **Physician** shall advise, and the Certificate shall

2

provide, that the carrier will give **PHS** thirty (30) days' written notice prior to any policy reduction, change in coverage, cancellation, or refusal to renew the coverage.

**Physician** shall make suitable and reasonable provision for financial coverage of **PHS** and **Facility** (and any party or parties, corporation, partnership, group or association acting, or failing to act on **Physician's** behalf) consistent with this Agreement, for a period equal to the statute of limitations, for any actions brought or claims which may be made arising out of any of the services actually rendered, or which were failed to be rendered, under this Agreement following the termination of this independent contractor relationship for whatever reason. **Physician** shall provide proof of the provision of such tail coverage to **PHS** on or before the effective date of termination of this Agreement. **Physician** agrees that any payments owed to **Physician** by **PHS** may be withheld until satisfactory proof of such coverage is presented to **PHS**. Should **Physician** fail to provide such proof within ten (10) days of the termination, **PHS** may, at its option, use the withheld funds or other funds to purchase such coverage as it deems necessary for its protection. Any funds so expended shall be reported as income to **Physician**, who shall be solely liable for any tax payments due.

(b) Workers' Compensation: **PHS** shall not be responsible for providing worker's compensation coverage to **Physician** or **Physician's** employees if any since **Physician** is an independent contractor. If such coverage is required by law **Physician** shall be responsible for acquiring it.

(c) Tax Liability: **Physician** is solely responsible for any tax payments due to federal, state or local authorities as a result of this Agreement. **PHS** shall not withhold any taxes from payments made to **Physician** under this Agreement, nor shall **PHS** be responsible for providing unemployment insurance coverage for **Physician**.



1.6 Billing Address:

PHS billing address for claims is as follows:

> Prison Health Services, Inc.
> 105 Westpark Drive, Suite 200
> Brentwood, Tennessee 37027
> Attn: Claims

Or such other address as **Physician** is notified by **PHS**.

All claims inquiries should be directed to **PHS** at 800-729-0069.

1.7 **Physician** will submit claims to **PHS** within 60 days of date services were rendered to the inmate or **PHS** will have no obligation to pay. **PHS** shall reimburse **Physician** within 45 days from the receipt of a clean claim.

1.8 Guidelines for billing and coverage for services not specifically detailed within this agreement will be governed by the most current version of the Centers for Medicare and Medicaid Service's guidelines for the Medicare Program.

1.9 The laws of this Agreement shall be governed by the State of Alabama.

1.10 Notices: All notices or other writings required under this Agreement shall be considered as having been provided when sent by U.S. mail, first class, postage-prepaid or by certified mail, to the parties at the following addresses:

> TO **Physician**:   Tai Chung, MD
>                     6936 Winton Blount Blvd
>                     Montgomery, AL  36117
>
> TO **PHS**:         Prison Health Services, Inc.
>                     105 Westpark Drive, Suite 200
>                     Brentwood, Tennessee 37027
>                     Attn: General Counsel

With a courtesy copy to Attn: Vice President, Network Development at the above address.

4

2.  **PHS PROCEDURES:** Physician agrees to support and adhere to **PHS** procedures and policies regarding Quality Assurance, Risk Management and Utilization Review.

3.  **PEER REVIEW:** As independent medical professionals, **Physician** medical services are subject to review by an appropriate committee appointed by **PHS** to review the medical services provided by professionals such as **Physician**.

4.  **TERMINATION OF THE CONTRACT:**

    4.1  **PHS** and the **Physician** each will have the right to terminate this Agreement without cause at any time upon no less than thirty (30) days' written notice. Termination will be effective upon the date stated in the notice.

    4.2  This Agreement shall terminate **immediately**:

    (a)  Upon cancellation, termination, or reduction of insurance coverage required by this Agreement;

    (b)  Upon the termination or expiration of **PHS'** agreement with the **Facility**;

    (c)  If **Physician** loses the authority to practice medicine in the State of Alabama;

    (d)  Upon the death of the **Physician**;

    (e)  If actions of the **Physician** result in allegations of moral turpitude or tend to reflect badly on the **Facility**;

    (f)  If **Physician** is adjudicated guilty of a felony or any crime of moral turpitude or involving immoral conduct.

5.  **STATUS:** In performing services under this Agreement, **Physician** shall be acting as an independent contractor. Under no circumstances, shall **Physician** or any other person employed by or associated with the **Physician** be treated as or hold themselves out as an employee of PHS. PHS shall exercise no control over the professional practice of medicine by **Physician** in providing services under this Agreement and PHS shall have no retained right of control, express or implied, over the manner in which

5

Physician performs any services which in any way involve the practice of medicine under this Agreement. **Physician** is not eligible for and may not participate in any pension, health or other fringe benefit plan offered by PHS to its employees.

6. **HOLD HARMLESS AND INDEMNIFICATION:** PHS agrees to indemnify and hold harmless **Physician** and its agents and employees from any and all claims, damages and lawsuits of any kind whatsoever based upon the health care provided by **PHS** and any of its staff members.

   **Physician** agrees to indemnify and hold harmless **PHS** and its agents and employees from any and all claims, damages and lawsuits of any kind whatsoever based upon the acts or omissions of **Physician** or any of its staff members, employees or agents.

7. **WAIVER OF BREACH OR VIOLATION NOT DEEMED CONTINUING:** The waiver by either party of a breach or violation of any provision of this Agreement shall not operate as or be construed to be a waiver of any subsequent breach thereof.

8. **CONFIDENTIAL INFORMATION:** **Physician** agrees not to disclose or in any way use, or allow any other person to disclose or use, confidential information of or concerning **PHS** or the various facilities either during or after the term of this Agreement without **PHS'** prior express written consent.  Confidential information includes, but is not limited to, legal or claim data, financial data, methods of operation, policies and procedures. **Physician** shall not copy or remove **PHS** documents for its own use or for the use of others, nor shall **Physician** make use of or allow or assist any other person or company to make use of any **PHS** procedure or program, including but not limited to those relating to utilization review or quality improvement, except as authorized under this Agreement. **Physician** shall not disclose, or allow others to disclose, the terms of this Agreement, except as it is necessary to perform this Agreement or to obtain accounting, legal or tax advice from **Physician** professional advisors.

   **Physician** will comply with all procedural activities that may be required to achieve compliance the proposed Health Insurance Portability and Accountability Act of 1996 (HIPAA) rules and regulations as they become final.

9. **NON-SOLICITATION COVENANT: Physician** agrees not to solicit **PHS** employees for employment by **Physician**, during the

term of this Agreement and for a one (1) year period following the termination of this Agreement.

10. **SEVERABILITY**: If any provision of this Agreement or the application of any provision to any person or to any circumstances shall be determined to be invalid or unenforceable, then such determination shall not affect any other provision of this Agreement or the application of such provision to any other person or circumstance, all of which other provisions shall remain in full force and effect. It is the intention of **PHS** and the **Physician** that this Agreement and each of its terms shall be construed, if possible, in a manner which renders such terms legally enforceable.

11. **PARAGRAPH HEADINGS**: The paragraph headings contained in this Agreement are for convenience and description only and shall in no manner be construed as part of this Agreement.

12. **ASSIGNABILITY**: Neither this Agreement or any right, duty or obligation created by this Agreement shall be assigned, in whole or in part, by either party without the prior written consent of the other party.

13. **ENTIRE AGREEMENT**: This written agreement expresses the entire understanding between the parties with reference to its subject matter. All prior negotiations and understandings are suppressed by this written Agreement, which may be amended only in writing signed by all parties.

**Remainder of page intentionally left blank**

IN WITNESS WHEREOF, the parties have executed this Agreement effective as of that Commencement Date first above written.

PRISON HEALTH SERVICES, INC.

By: Laura Ferrell

*[signature]*

Regional Vice President

Print Name: Laura Ferrell

Date: 12/14/03

By: Joanna B. García

*[signature]*

Vice President, Network Development

Print Name: Joanna B Garcia

Date: 12-23-03

TAI CHUNG, MD

By: *[signature]*

Signature

Print Name: T M CHUNG

Date: November 18, 2003

SSN or TIN: 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

**CONTRACT NOT VALID WITHOUT CORPORATE AND REGIONAL SIGNATURES**

Physician Agreement Off site_Alabama
Revised 10/03

8