**IN THE UNITED STATES DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| **LARRY CARL DIXON #138238** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | |
| | ) | **CIVIL ACTION NO. 2:07-CV-662-WKW** |
| | ) | |
| **CHERYL PRICE, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**SPECIAL REPORT**

**COMES NOW** the Defendant, Tai Q. Chung, M.D., and respectfully submits his Special Report pursuant to this Court's Order of September 25, 2007.

I. Introduction

The Plaintiff, a prisoner incarcerated at the Bibb County Correctional Facility, filed a Complaint claiming he received substandard medical attention for an injury to his left index finger[1]. Plaintiff demands relief from the court.

II. The Parties[2]

a. The Plaintiff, Larry Dixon, is an inmate currently incarcerated at the Bibb County Correctional Facility.

b. Dr. Tai Q. Chung is an orthopaedic surgeon in private practice in Montgomery, Alabama. Dr. Chung attended college at Princeton University and graduated with

[1] The Plaintiff also brings various claims alleging unconstitutional programs, improper transfer of inmates across state lines, and classification of inmates. However, the only claim brought by the plaintiff against Dr. Chung is that of an Eighth Amendment violation for alleged substandard medical care. This Special Report only addresses the claims against Dr. Chung.

[2] The plaintiff also brings claims against Cheryl Price, Central Classification Directors, Baptist South Medical Hospital and Dr. Carlos Guierrez. This Special Report only addresses the Plaintiff's claims against Dr. Tai Q. Chung.

a BA in Physics in 1975.  Dr. Chung graduated from Yale University Medical School in 1979 and did his surgery internship at Stanford University Medical Center from 1979 to 1980.  Dr. Chung's residency was in orthopaedic surgery and he was Board certified with the American Board of Orthopaedic Surgery in 1986, and was recertified in 1996 and 2006.  He is currently licensed to practice medicine in California and Alabama.

III.    Facts

The Plaintiff is currently incarcerated in the Bibb County Correctional Facility (AIS # 138238)(See Complaint).  On August 3, 2005, while incarcerated, the tip of the Plaintiff's left index finger was partially amputated by a window.  (See Complaint; Affidavit of Dr. Chung).  He was taken to the Baptist South Emergency Room for treatment.  (See Complaint).  Mr. Dixon was then seen by Dr. Chung for follow-up treatment.  (See Complaint; Affidavit of Dr. Chung).

On August 31, 2005, Dr. Chung saw Larry Dixon in his office.  (Affidavit of Dr. Chung; See attached medical records from Dr. Chung).  The tip of the Plaintiff's left index finger had been amputated by a window on August 3, 2005.  (Affidavit of Dr. Chung; See attached medical records from Dr. Chung).  Mr. Dixon's amputation had been repaired at Baptist South Emergency Room.  (Affidavit of Dr. Chung; See attached medical records from Dr. Chung).  The Plaintiff complained of some tenderness at the amputation tip at that time.  (Affidavit of Dr. Chung; See attached medical records from Dr. Chung).  The wound appeared to be healing well.  (Affidavit of Dr. Chung; See attached medical records from Dr. Chung).  The Plaintiff had previously placed sutures in his finger.  (Affidavit of Dr. Chung; See attached medical records from Dr. Chung).  The Plaintiff had some tenderness on palpitation at the tip of his finger.  (Affidavit of Dr. Chung; See attached medical records from Dr. Chung).  He could wiggle the tip of the finger.  (Affidavit of Dr. Chung; See attached medical records from Dr. Chung).  He had some decreased sensation to light touch at the tip of his finger.  (Affidavit of Dr. Chung; See

attached medical records from Dr. Chung). At that time, Dr. Chung removed his sutures and showed the Plaintiff how to desensitize the tip by lightly tapping on the area on a soft surface. (Affidavit of Dr. Chung; See attached medical records from Dr. Chung). Dr. Chung determined that if the tip of his finger remained tender, he may require revision to shorten the length to give him better soft tissue coverage. (Affidavit of Dr. Chung; See attached medical records from Dr. Chung). The Plaintiff was to return to see Dr. Chung as needed. (Affidavit of Dr. Chung; See attached medical records from Dr. Chung).

Dr. Chung saw Mr. Dixon again on October 7, 2005 for an office visit. (Affidavit of Dr. Chung; See attached medical records from Dr. Chung). The Plaintiff still had some pain. (Affidavit of Dr. Chung; See attached medical records from Dr. Chung). Dr. Chung's examination revealed that the Plaintiff's wound had healed, but with some tenderness on tapping at the tip of his finger. (Affidavit of Dr. Chung; See attached medical records from Dr. Chung). Dr. Chung discussed sensitization exercises with the Plaintiff and ordered that he was to return to see him as needed. (Affidavit of Dr. Chung; See attached medical records from Dr. Chung).

On October 22, 2003, Dr. Chung entered into a physician agreement with Prison Health Services, Inc. (PHS) whereby he agreed to provide orthopaedic services on a non-exclusive basis for inmates under the control of the Alabama Department of Corrections. (Affidavit of Dr. Chung; See attached contract). Under this agreement, Dr. Chung is to be considered an independent contractor, and PHS does not exercise any control over his professional practice of medicine, and PHS has retained no right of control over the manner in which Dr. Chung performs his services. (Affidavit of Dr. Chung; See attached contract).

The plaintiff claims that Dr. Chung rendered substandard medical care to him but fails to make any showing of the same. Dr. Chung's treatment of the Plaintiff met or exceeded the applicable standard of care. (Affidavit of Dr. Chung).

IV. Plaintiff's Allegations and Defendants' Response

Ground One: The plaintiff complains that his Eighth Amendment rights were violated when Dr. Chung allegedly rendered substandard medical care.

The medical care rendered by Dr. Chung was appropriate and met or exceeded the applicable standard of care. Dr. Chung saw the Plaintiff on August 31, 2005, almost a month after his initial injury, and removed the sutures from the Plaintiff's finger, which appeared to be healing well. Dr. Chung further counseled the Plaintiff on desensitizing his finger, which had some tenderness. Dr. Chung again saw the plaintiff on a follow up visit on October 7, 2005. The Plaintiff's wound had healed; although the Plaintiff continued to have some tenderness. Dr. Chung again counseled the Plaintiff on sensitization exercises to alleviate the tenderness.

Ground Two: The plaintiff specifies that he is suing Dr. Chung pursuant to the Eighth Amendment to the United States Constitution. However, out of an abundance of caution, this Defendant will assume the Plaintiff is making a state law claim of medical malpractice. However, there is no evidence of any malpractice by Dr. Chung. Dr. Chung's treatment of the Plaintiff met or exceeded the applicable standard of care. Dr. Chung successfully removed sutures from the Plaintiff's finger and treated him for residual tenderness. There is no evidence, expert or otherwise, that Dr. Chung committed malpractice while treating the Plaintiff.

V. Analysis of Applicable Law

A. Federal Claims

The Plaintiff presumably brings his claims against Dr. Chung under § 1983, alleging violation of his Eighth Amendment rights. In order "[t]o state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state

law." West v. Atkins, 487 U.S. 42, 48 (1988). The Plaintiff has not alleged a violation of his constitutional rights by Dr. Chung. A Montgomery federal court held that "[w]here a plaintiff does not allege that a defendant personally participated in alleged constitutional deprivations, the plaintiff must establish an affirmative causal connection between the act or omission complained of and the alleged constitutional deprivations in order to sustain a § 1983 cause of action against the defendant." Ludlam v. Coffee County, 993 F.Supp. 1421 (M.D. Ala. 1998). The plaintiff fails to identify any act or omission by Dr. Chung that resulted in a constitutional violation. Accordingly, plaintiff fails to meet the standard by which a § 1983 claim can be sustained against Dr. Chung.

The Plaintiff has alleged a violation of his Eighth Amendment rights, and Dr. Chung was a state actor pursuant to West v. Atkins, supra.[3] However, the Plaintiff cannot establish a constitutional deprivation, nor can he establish that Dr. Chung acted with deliberate indifference to his constitutional rights.

The Eleventh Circuit has held that "deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment." Faison v. Rosado, 129 Fed.Appx. 490, 491 (11th Cir.2005). However, "every claim by a prisoner that he has not received adequate medical treatment…does not state a violation of the Eighth Amendment." Id. Indeed, the Eleventh Circuit has held that:

> To show an objectively serious deprivation of medical care, an inmate must demonstrate (1) an objectively serious medical need that, left unattended, poses a substantial risk of serious harm, and (2) that the response made by public officials to the need was poor enough to constitute an unnecessary and wanton infliction of pain,

[3] The United States Supreme Court held that a doctor who is under contract to provide medical services to inmates, even on a part time basis, acts under color of law when treating an inmate. Dr. Chung entered into a physician agreement with Prison Health Services, Inc. (PHS) whereby he agreed to provide orthopaedic services on a non-exclusive basis for inmates under the control of the Alabama Department of Corrections. (Chung Affidavit).

> and not merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law. In addition, to show the required subjective intent to punish, a plaintiff must demonstrate that the public official acted with an attitude of deliberate indifference, by demonstrating (1) awareness of facts from which the inference could be drawn that a substantial risk of serious harm existed, and (2) the drawing of this inference. Because an inadvertent failure to provide adequate medical care does not constitute unnecessary and wanton infliction of pain, a prisoner's complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

Id. at 491-492.

In the case at bar, the Plaintiff's complaint against Dr. Chung seems to be that Dr. Chung did not provide adequate medical care. Dr. Chung saw the Plaintiff after he had been already received medical care for his injuries, removed sutures, determined his would was healing well, and counseled the Plaintiff of exercises to perform to alleviate his tenderness. Indeed, on the October 7, 2005 follow up visit with Dr. Chung, the doctor noted that the Plaintiff's wound had healed well and the plaintiff only mentioned lingering tenderness. The Plaintiff's belief that he should have any alternative treatment is not determinative. Even if the plaintiff does not "agree with the method of treatment provided, matters of medical judgment do not give rise to a §1983 claim." Id. at 492.

It is undisputed that the plaintiff received medical care, from Dr. Chung and others. The Eleventh Circuit has noted that "when a prison inmate has received medical care, courts hesitate to find an Eighth Amendment violation." Waldrop v. Evans, 871 F.2d 1030, 1035 (11th Cir. 1989). The Plaintiff fails to establish any constitutional violation by Dr. Chung.

B.    State Law Claims

It is unclear whether the plaintiff brings a state law claim for medical malpractice against Dr. Chung. In any event, the plaintiff cannot establish any such state law claim against Dr. Chung. In order:

> to establish a cause of action for medical malpractice, a plaintiff must establish, generally by expert testimony: (1) the appropriate standard of care, (2) a breach of that standard of care, and (3) a proximate causal connection between the defendant doctor's act or omission constituting the breach and the injuries sustained by the plaintiff. Unless, the cause and effect relationship between the breach and the standard of care and the subsequent complication or injury is so readily understood that a lay person can reliably determine the issue of causation, a plaintiff must establish causation through expert testimony.

Prowell v. Children's Hospital of Alabama, 2006 WL 1304917 (Ala.2006)(internal quotations and citations omitted). The plaintiff has not and cannot establish through medical expert testimony that any act or omission by Dr. Chung violated the applicable standard of care. Indeed, Dr. Chung rendered treatment to the plaintiff and at all times, provided medical services to the plaintiff which met or exceeded the applicable standard of care.

VII.    Immunity

a.    Immunity Under Article 1 § 14 of the Alabama Constitution of 1901

"When Article 1, § 14 Alabama Constitution of 1901, has been violated, a trial court is without jurisdiction to entertain the action and the action must be dismissed." Sholas Community College v. Colagross, 674 So.2d 1311 (Ala. Civ. App. 1995). The Alabama Constitution mandates that "the State and its agencies have absolute immunity from suit in any court." Id. (citing Phillips v. Thomas, 555 So.2d 81, 83 (Ala. 1989)). State officers "in their official capacities and individually, are also absolutely immune from suit when the action is, in

effect, one against the state." Colagross, 674 So.2d at 1313 to 1314 (citing Phillips v. Thomas, 555 So.2d at 83). Because Dr. Chung is considered a state actor for the purposes of § 1983, the action against him is an action against the state. Accordingly, summary judgment is due to be granted to him with respect to any state law claims pursuant to Article 1, § 14 of the Alabama Constitution of 1901.

b. Substantive Immunity

The Alabama Supreme Court has held that the "doctrine of substantive immunity may yet be invoked if the official or employee (1) is engaged in the exercise of a discretionary function; (2) is privileged and does not exceed or abuse the privilege; or (3) is not negligent in his responsibility." DeStafney v. University of Alabama, 413 So.2d 391 (Alabama 1981). The Alabama Supreme Court has further noted that state officers or employees are entitled to substantive immunity "if they were engaged in the exercise of a discretionary function." Nance by and through Nance v. Matthews, 622 So.2d 297 (Ala. 1993). The Court noted that Black's Law Dictionary defines discretionary acts as "those acts [as to which] there is no hard and fast rule as to course of conduct that one must or must not take and, if there is [a] clearly defined rule, such would eliminate discretion…one which requires exercise in judgment and choice and involves what is just and proper under the circumstances." Id. (citing Black's Law Dictionary 419 (5th Ed. 1979)). Dr. Chung acted within his discretion when providing medical attention to Plaintiff, and accordingly, is entitled to substantive immunity for any state law claims.

c. Official Capacity Immunity

The United States Supreme Court has held that "a state is not a person within the meaning of § 1983." Will v. Michigan Depart. Of State Police, 491 U.S. 58 (1989). The Court has further held that "§ 1983 provides a federal forum to remedy many deprivations of civil

liberties, but it does not provide a federal forum for litigants who seek a remedy against a state for alleged deprivations of civil liberties." Id. The court went on to note that "suit against a state official in her or her official capacity is not a suit against the official but rather is a suit against the official's office." Id. The Court, therefore, held that "neither a state nor its officials acting in their official capacities are persons under § 1983." Id. In his Complaint, the Plaintiff specifies that he brings the action against the Defendants in their individual and official capacities. Because Dr. Chung, at all material times hereto was a state actor, acting in his official capacity, he is not subject to liability pursuant to § 1983.

There was no deliberate indifference by Dr. Chung. Dr. Chung was a state official acting in good faith and is immune from suit under Article I, § 14 of the Alabama Constitution of 1901 and in accordance with the doctrine of substantive and official capacity immunity.

VII. Conclusion

The Plaintiff is asking this Court to award him all the relief the court deems proper. Plaintiff has failed to prove any constitutional deprivation and has failed to set forth any evidence of denial of medical attention and/or adequate medical care.

VIII. Motion for Summary Judgment

The Defendant respectfully requests this Honorable Court to treat his Special Report as a Motion for Summary Judgment and grant the same unto him.

Respectfully submitted this 5th day of November, 2007.

/s/ E. Ham Wilson, Jr.
Attorney for Tai Q. Chung, M.D.

OF COUNSEL:

BALL, BALL, MATTHEWS & NOVAK, P.A.
2000 Interstate Park Drive, Suite 204
Post Office Box 2148
Montgomery, Alabama  36102-2148
(334)387-7680

CERTIFICATE OF SERVICE

I hereby certify that on this the 5th day of November, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Office of the Attorney General
11 South Union Street
Montgomery, AL 36130

Staff Attorneys
cc_prose@almd.uscourts.gov

Frank Johnston Stakely
fjs@rsjg.com,gc@rsjg.com

Richard Brett Garrett
bg@rsjg.com, klee@rsjg.com

James Eugene Williams
jwilliams@mewlegal.com,lmcgee@mewlegal.com

The following person, not registered with the CM/ECF system, was served by U.S. mail:

Larry Carl Dixon
AIS 138238 E3-1
Bibb County Correctional Facility
565 Bibb Lane
Brent, AL 35034

by placing same in the U.S. mail postage prepaid on this the 5th day of November, 2007.

/s/ E. Ham Wilson, Jr.
OF COUNSEL

IN THE UNITED STATES DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| **LARRY CARL DIXON #138238** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | |
| | ) | **CIVIL ACTION NO. 2:07-CV-662-WKW** |
| | ) | |
| **CHERYL PRICE, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**AFFIDAVIT OF TAI Q. CHUNG**

Before me, the undersigned authority, on this day personally appeared Tai Q. Chung who being by me first duly sworn, deposed and stated upon his oath the following:

My name is Tai Q. Chung. I am over the age of 21 years. I have personal knowledge of the following:

I am, and at all material times hereto have been, an orthopaedic surgeon in private practice in Montgomery, Alabama. I attended college at Princeton University and graduated with a BA in Physics in 1975. I graduated from Yale University Medical School in 1979 and did my surgery internship at Stanford University Medical Center from 1979 to 1980. My residency was in orthopaedic surgery and I was Board certified with the American Board of Orthopaedic Surgery in 1986, and was recertified in 1996 and 2006. I am currently licensed to practice medicine in California and Alabama.

On October 22, 2003, I entered into a physician agreement with Prison Health Services, Inc. (PHS) whereby I agreed to provide orthopaedic services on a non-exclusive basis for inmates under the control of the Alabama Department of Corrections. Under this agreement, I am to be considered an independent contractor and PHS does not exercise any control over my

professional practice of medicine and PHS has retained no right of control over the manner in which I perform my services.

On August 31, 2005, I saw Larry Dixon in my office. The tip of his left index finger had been amputated by a window on August 3, 2005. Mr. Dixon's amputation had been repaired at Baptist South Emergency Room. He complained of some tenderness at the amputation tip at that time. The wounds appeared to be healing well. He had previously placed sutures. He had some tenderness on palpitation at the tip of his finger. He could wiggle the tip of the finger. He had some decreased sensation to light touch at the tip of his finger. At that time, I removed his sutures and showed Mr. Dixon how to desensitize the tip by lightly tapping on the area on a soft surface. I determined that if the tip of his finger remained tender, he may require revision to shorten the length to give him better soft tissue coverage. Mr. Dixon was to return to see me as needed.

I saw Mr. Dixon again on October 7, 2005 for an office visit. Mr. Dixon still had some pain. My examination revealed that his wound had healed, but with some tenderness on tapping at the tip of his finger. I discussed sensitization exercises with him and ordered that he was to return to see me as needed.

The medical services I provided to Mr. Dixon met the applicable standard of care for orthopaedic medical care. At all times, I provided medical services to Mr. Dixon which met or exceeded the applicable standard of care. Attached hereto are the true and correct copies of medical records relating to the care I provided to Mr. Dixon. These records are kept in the ordinary course of business.

Executed this the 5th of November, 2007.

Tai Q. Chung

TAI Q. CHUNG

STATE OF ALABAMA
COUNTY OF Montgomery

Before me, the undersigned Notary Public, did personally appear TAI Q. CHUNG who states to me that he is aware of the contents of the foregoing document, and that he did execute it voluntarily.

SWORN TO and SUBSCRIBED before me on this the 5th day of November, 2007.

Yolanda J. Hamner
NOTARY PUBLIC
My commission expires: Yolanda J. Hamner
Notary Public
State of Alabama
My Commission Expires 4-30-2010

**LARRY DIXON** **OFFICE VISIT** **AUGUST 31, 2005**

**CHIEF COMPLAINT:** The patient is a 47 year-old ambidextrous gentleman referred from the Elmore Correctional Facility with history of finger amputation at the tip of his left index finger on August 3, 2005. This was done by a window. He had repair of the amputation at Baptist South ER. He had no previous injury to this area. He has some tenderness at the amputation tip at this time.

**MEDICAL HISTORY:** Is remarkable for hypertension.

**MEDICATIONS:** Maxzide.

**ALLERGIES:** None.

**EXAMINATION:** There has been an amputation at the distal half of the distal phalanx of the left index finger. The plane of the amputation is distal and dorsal. There are previously placed sutures. The wounds appear to be healing okay. There is some tenderness on palpation at the tip. He can wiggle the tip. Sensation is decreased to light touch at the tip.

**IMPRESSION:** Status post amputation of the left index fingertip

**PLAN:** I took his sutures out. I have shown him how to desensitize the tip by lightly tapping on the area on a soft surface. If the tip remains tender, in the future, he may require revision to shorten the length to give him better soft tissue coverage. Return to see me as needed.

**Tai Q. Chung, M.D.**

**TQC/rpk**

567-1538/04

**LARRY DIXON** **OFFICE VISIT** **OCTOBER 07, 2005**

**CHIEF COMPLAINT:** This is follow-up of amputation of left index finger. He still has some pain.

**EXAMINATION:** Wound is healed. There is some tenderness on tapping of the tip.

**PLAN:** Discuss sensitization exercises with him. Return to see me as needed.

Tai Q. Chung, M.D.

TQC/rpk

# UTILIZATION MANAGEMENT REFERRAL REVIEW FORM

PHS

Please send this form ... must be Complete and Legible. You must Type or ... Authorization Letter to the service provider at th... of the Appointment

## DEMOGRAPHICS

Site Name & Number: Staton 843

Patient Name: (Last, First) Dixon, Larry

Date: (mm/dd/yy) 8/23/05

Site Phone #: (334) 567-1546

Alias: (Last, First)

Date of Birth: (mm/dd/yy) 10/31/58

Site Fax #: (334) 567-1538

Inmate #: 138238

PHS Custody Date: (mm/dd/yy) __/__/__

Will there be a charge? ☐ Yes ☐ No

Sex ☐ Male ☐ Female

SS Number

Potential Release Date: (mm/dd/yy) __/__/__

Responsible party: ☐ PHS ☐ Auto Ins. ☐ Health Ins.(Excludes Medicare/Medicaid Managed Care alternative plans) ☐ Other, be specific (Excludes Medicare, Medicaid and Veterans Administration Services):

## CLINICAL DATA

Requesting Provider: ☑ Physician ☐ NP, PA ☐ Dental

[signature]

Facility Medical Director Signature and Date:

John W. Pressand SAA

☐ Service meets criteria for "approval via protocol"

Place a check mark (✓) in the Service Type requested (one only) and complete additional applicable fields.

☐ Office Visit (OV) ☐ X-ray (XR) ☐ Scheduled Admission (SA)

☐ Outpatient Surgery (OS) ☐ Dialysis (DA)

☐ Routine ☑ Urgent

Estimated Date of Service (mm/dd/yy) __/__/__

(This starts the approval window for the "open authorization period")

Multiple Visits/Treatments: ☐ Radiation therapy ☐ Chemotherapy ☐ Other:

Number of Visits/Treatments: 2

Specialist referred to: Orthopedist Dr Chung

Type of Consultation, Treatment, Procedure or Surgery: Evaluate (L) index amputation (TIP of finger)

Diagnosis: (L) index finger amputation

ICD-9 code:

You must include copies of pertinent reports such as lab results, x-ray interpretations and specialty consult reports with this form.

☑ Pertinent Documents have been attached and faxed. Send Report Fax

History of Illness/Injury/Symptoms with Date of Onset: Amputation of tip of (L) index finger 8/13/05. c/o ↑ Pain + feels bone exposed

Results of a complaint directed physical examination: Stitches still in place – pt c/o pain bitterly, from just wiping c alcohol will not allow me to remove Suture

Previous treatment and response (including medications): ER – visit on 8/13/05 motrin, Keflex

Appt at 3PM at Dr Chung

***For security and safety, please do not inform patient of possible follow-up appointments***

Send ER Visit sheet

UM DETERMINATION:

☐ Offsite Service Recommended and Authorized

☐ Alternative Treatment Plan (explain here):

☐ More Information Requested (See Attached)

☐ Resubmitted with requested information.

Date resubmitted: __/__/__

Regional Medical Director Signature, printed name and date required:

(mm/dd/yy)

Do not write below this line. For Case Manager and Corporate Data Entry ONLY.

Cert Type: | Med Class: | CPT code: | UR Auth #

09/18/2007 09:16 AM

# UTILIZATION MANAGEMENT REFERRAL REVIEW FORM

Please send this form with the Authorization Letter to the service provider at the time of the Appointment. Must be Complete and Legible. You must Type or Print.

PHS

## DEMOGRAPHICS

Site Name & Number: Staton 843

Site Phone #: (334) 567-1548

Site Fax #: (334) 567-1538

Will there be a charge? [X] Yes [ ] No

Sex: [X] Male [ ] Female

Patient Name: (Last, First) Dixon, Larry

Alias: (Last, First)

Inmate #: 138238

SS Number: 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

Date: (mm/dd/yy) 8/23/05

Date of Birth: (mm/dd/yy) 10/31/58

PHS Custody Date: (mm/dd/yy) 02/23/88

Potential Release Date: (mm/dd/yy) 05/ /06

Responsible party: [X] PHS [ ] Auto Ins. [ ] Health Ins. (Excludes Medicare/Medicaid Managed Care alternative plans) [ ] Other, be specific (Excludes Medicare, Medicaid and Veterans Administration Services):

## CLINICAL DATA

Requesting Provider: [X] Physician [ ] NP, PA [ ] Dental

Facility Medical Director Signature and Date: John [illegible]

[ ] Service meets criteria for "approval via protocol"

Place a check mark (✓) in the Service Type requested (one only) and complete additional applicable fields.

[X] Office Visit (OV) [ ] X-ray (XR) [ ] Scheduled Admission (SA)
[ ] Outpatient Surgery (OS) [ ] Dialysis (DA)

[X] Routine [ ] Urgent

Estimated Date of Service: (mm/dd/yy) / /

(This starts the approval window for the "open authorization period")

Multiple Visits/Treatments: [ ] Radiation therapy [ ] Chemotherapy [ ] Other:

Number of Visits/Treatments: 2

Specialist referred to: Orthopedist Dr Chung

Type of Consultation, Treatment, Procedure or Surgery: Evaluate (L) index Amputation (Tip of finger)

Diagnosis: (L) index finger Amputation

ICD-9 code:

You must include copies of pertinent reports such as lab results, x-ray interpretations and specialty consult reports with this form.

[X] Pertinent Documents have been attached and faxed. Send Report [illegible]

History of illness/injury/symptoms with Date of Onset: Amputation of tip of (L) index finger 8/13/05 c/o pain + feels bone exposed

Results of a complaint directed physical examination: Stitches still in place — pt c/o pain bitterly from just wiping c alcohol will not allow me to remove sutures

Previous treatment and response (including medications): ER visit on 8/13/05 motrin, keflex ~~Oct 7 @ 4~~ Appt at 3PM of Dr Chung

***For security and safety, please do not inform patient of possible follow-up appointments***

Send ER Visit [illegible]

UM DETERMINATION:

[ ] Alternative Treatment Plan (explain here):

[ ] More Information Requested: (See Attached)

[ ] Resubmitted with requested information.

[ ] Offsite Service Recommended and Authorized

Date resubmitted: / /

FAXED 8/30/05

Regional Medical Director Signature, printed name and date required: / / (mm/dd/yy)

Do not write below this line. For Case Manager and Corporate Data Entry ONLY.

| Cert Type: | Med Class: | CPT code: | UR Auth #: 15386664 |
|---|---|---|---|

# Dr. Tai Chung

## PATIENT INFORMATION SHEET

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
Social Security Number

Referring Physician: ______

Date of Injury or Illness: 8-3-05

LARRY
First Name

CARL
MI

DIXON
Last Name

NA
Title

10-31-57
Date of Birth

47
Current Age

Male ✓ Female ______

Marital Status: __ Married ✓ Single __ Divorced __ Widowed

Patient's Occupation: ______

1160 SO ANN ST.
Address

MOBILE
City

AL
State

36605
Zip Code

NA
Home Telephone Number

NA
Work Telephone Number

NA
Cellular Telephone Number

______
Patient's Employer

______
Employers Address, City, State and Zip Code

Is your visit related to a workman's comp injury? If so, please list w/c ins. ______

Workman's Comp insurance adjuster's name: Elmore

DHS

Indicate who we may speak with or leave a message regarding your health information ______

Emergency Contact Name(s)

______
Relationship

______
Home Telephone Number

______
Work Telephone Number

______
Present Complaint

HTN
Chronic Illness:

Drug allergies ϕ

Medications currently taking: (1) maxzide

(2) ______ (3) ______ (4) ______ (5) ______

**PLEASE GIVE ALL INSURANCE CARDS TO RECEPTIONIST**

**RELEASE OF INFORMATION, BENEFIT ASSIGNMENT, PAYMENT AUTHORIZATION, FULL DISCLOSURE AND AGREEMENT TO PAY FOR PROFESSIONAL SERVICES.**

I hereby authorize Dr. Tai Chung, to release any information necessary to process any insurance claim acquired in the course of my examination or treatment to allow a photocopy of my signature to be used to process my insurance claim. I claim, direct, and authorize my carrier to issue payment check(s) directly to Dr. Tai Chung, for any insurance benefits to which I am entitled. I understand that failure to discharge precertification/second opinion requirements for any and all plans to which I subscribe may cause me to incur full liability for professional charges as a result of non-payment by my carrier. Regardless of insurance benefits, if any, I understand that I am fully responsible for any and all fees incurred and I agree the above is a legal and lawful debt. If it becomes necessary to forward this account to collections, I agree to be responsible for any/all collection costs, attorney fees and/or court costs. I waive now and forever my right of exemption under the laws of the constitution of the State of Alabama and any other state. I realize that in extraordinary circumstances, some insurance companies will not pay for certain procedures(i.e. MRI's or Ultrasounds). I understand that my insurance is filed as a courtesy and I am responsible for the bill.

Larry C Dixon
Patient/Responsible Party Signature

8-31-05
Date

Payment of co-payment is expected at the time of service. Check ____ Credit Card ____ Cash ____



## PROGRESS NOTES

| Date/Time | Inmate's Name: Dixon, Larry D.O.B.: / / |
|---|---|
| 8/30 | DOS 7/5/07 Here [illegible] window. Stitched [illegible] Bypass [illegible] c [illegible] 7-7 |
| | Ex [illegible] closed [illegible] [illegible] Wound healing. |
| | P Remove stitches. Desensitizing by tapping Many need revision surgery of [illegible] [illegible] |

Complete Both Sides Before Using Another Sheet

60111-5 85

| Patient Name: | Dixon, Larry | Inmate Number: | 138238DI |
|---|---|---|---|
| Service Authorized: | Office Visits: Op Orthopedics Referral | Effective Dates: | 08/23/2005 to 10/23/2005 |
| Effective: | Visits authorized for 60 days from effective date. | Visits Authorized: | 2 |
| Responsible Facility: | Staton Correctional Facility | Contact Name: | Michelle Pope |
| Authorization Number: | 15386664 | Telephone Number: | (334)395-5973 Ext 14 |

**Note to Provider of Services:**

- **Medicare/Medicaid do not cover any health services provided to an inmate in custody, except in certain circumstances not applicable to this inmate.**
- Authorization is diagnosis and procedure specific. Any additional tests, procedures, and inpatient or outpatient services must receive prior authorization to ensure benefit eligibility and payment. (Use above contact name and telephone number)
- Authorization for payment of service is guaranteed only if service is provided during the actual time of confinement to the referring correctional facility.
- HIPAA: Please be advised Prison Health Services, Inc. ("PHS") is not a covered entity under HIPAA's Rule on the Privacy of Individually Identifiable Health Information Standard ("Privacy Rule"). Because PHS does not engage in electronic transactions under HIPAA's Electronic Transactions and Code Set Standards ("Transaction Standards"), HIPAA's Privacy Rule does not apply to PHS.
- Payment will not be processed until we receive a clinical summary.

**For Payment Please Submit Claims To:**

Prison Health Services
P.O. Box 967
Brentwood, TN 37024-0967

**The consulting physician should complete this section.
The completed form will be sealed in the attached envelope and returned with an officer to the correctional facility.**

**Clinical Summary or Attached Report**

8/3/05 [illegible]

[illegible]

[illegible]

[illegible]

***** For security and safety, please do not inform patient of possible follow-up appointments. *****

Signature of Consulting Physician: [signature] Date: 10/7/05 Time:

Reviewed and Signed By Medical Director: Date: Time:

09/18/2007 09:16 AM

HCX

HEALTHCARE CORRECTIONS

RADIOLOGY SERVICES REQUEST AND REPORT

INSTITUTION: Elmore

Name: Tony Dixon

State ID No: 138238

DOB 10-31-58

Race: B Sex: M

NOTE: PERTINENT CLINICAL INFORMATION AND TENTATIVE DIAGNOSIS MUST BE PROVIDED FOR X-RAY EXAMINATION TO BE PERFORMED

| Requesting Physician/PA/NP | Date of request | Time of request | Routine | Priority | Transportation or special needs |
|---|---|---|---|---|---|
| [illegible] | 8/18/02 | 7 [illegible] | | | |

HISTORY/DIAGNOSIS: Amputation of (L) index finger

Special attn to (L) index finger

X-RAY REQUEST

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | ABDOMEN/KUB | ✓ | FINGERS (L) | | NAVICULAR VIEW | | SOFT TISSUE STUDIES |
| | ACROMIO-CLAVICULAR JOINTS (W/W/O WEIGHT) | | FOOT | | ORBITS | | STERNUM |
| | ANKLE | | [illegible] | | OS CALCIS (HEEL) | | TEMPORO-MANDIBULAR JOINTS |
| | CERVICAL SPINE | | HIP | | PELVIS | | THORACIC SPINE |
| | CHEST PA / LATERAL | | HUMERUS | | RADIUS/ULNA | | TIBIA/FIBULA |
| | COCCYX | | KNEE | | RIBS | | TOES |
| | CONE DOWN SELLA TURCICA | | LUMBAR SPINE | | SACRO-ILIAC JOINTS | | WRIST |
| | ELBOW | | MANDIBLE | | SCAPULA | | ZYGOMA |
| | FACIAL BONES | | MAXILLA | | SHOULDER | | ZYGOMATIC ARCH |
| | FEMUR | | NASAL BONES | | SKULL | | |

Dixon

REPORT

LEFT INDEX FINGER: There has been an amputation of the distal end of the distal phalanx of the left index finger. The proximal end of the distal phalanx appears to be well covered with soft tissue. There is a small bony fragment adjacent to the distal end of the remaining fragment of the distal phalanx.

D: & T: 08-23-05 Howard P. Schiele, M.D./jhi Board Certified Radiologist (Signature on file)

TECHNOLOGIST'S NAME (PRINT)

X-RAY TECHNOLOGIST'S SIGNATURE

8-18-05

DATE, TIME EXAM PERFORMED

[...]OLOGIST'S NAME (PRINT)

RADIOLOGIST'S SIGNATURE

DATE SIGNED

DATE SIGNED